## Haggerty v. Yamaha Motor Corporation

*Shanin Specter,* for plaintiffs.
*Jonathan Dryer,* for defendant.

DIAZ, *J.,* August 25, 1989 — Plaintiffs filed this motion to compel the production of defendant's, Yamaha Motor Corporation, July 26, 1984 in-house memorandum. For the reasons stated herein, plaintiffs' motion is denied.

On or about April 21, 1989, plaintiffs filed a motion to compel the production of two documents which defendant identified as privileged communications. One document is a letter, dated January 17, 1986, from Michael J. Schmitt, Esq., staff attorney for defendant, to Melton Andrew, Esq. The other document is a July 26, 1984 in-house memorandum prepared by Mr. Schmitt detailing the outcome of a meeting between the representatives of the all-terrain vehicle industry and the Consumer Product Safety Commission. On July 26, 1989, this court heard oral argument on this motion and determined that the January 17, 1986 letter between attorneys for possible representation was protected by the attorney-client privilege. However, with regard to the July 26, 1984 in-house memorandum, the court ordered that defendant produce that document for an in camera inspection. Defendant has submitted the memorandum in compliance with this court's order and additionally has provided the court with an affidavit identifying the persons to whom the memorandum was addressed.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to

the common law." *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed 2d 584 (1981) (citing 8 J. Wigmore, Evidence §2290 (McNaughton rev. 1961)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.* at 682.

The application of the privilege becomes complicated when the client is a corporation which, in theory, is an artificial entity of the law. However, it generally is recognized that the attorney-client privilege applies to corporate clients. *Id.* at 683. In this context, courts have adopted several approaches, specifically the "subject-matter approach" and the "control group test," in order to determine which communications generated by the corporation are privileged. Pennsylvania courts traditionally have followed the "control group test" approach since its adoption in *Philadelphia v. Westinghouse Electric Corp.,* 210 F. Supp. 483 (E.D. Pa.), petition for mandamus and prohibition denied sub nom. *General Electric Co. v. Kirkpatrick,* 312 F.2d 742 (1962), cert. denied, 372 U.S. 943 (1963). Essentially, the "control group test" focuses on the ability of the communicating employee to take discretionary action upon the attorney's advice. *In re Grand Jury Investigations,* 599 F.2d 1224, 1235 (1979). The so-called "control group" has been defined as "those officers, usually top management, who play a substantial role in deciding and directing the corporation's response to the legal advice given." *United States v. Upjohn Co.,* 600 F.2d 1223, 1226 (1979).

While widely followed in many jurisdictions, the

"control group test" came under sharp criticism by the U.S. Supreme Court in *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677 (1981). The Supreme Court found the "control group test" too rigid and arbitrary in its application as well as inconsistent with the long-standing principles of common law. *Id.* at 686. It noted that employees beyond the scope of the control group often may possess information needed by the corporation's attorneys. *Id.* at 683. "Middle-level — and indeed lower-level — employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Id.* The Supreme Court refused to adopt a uniform rule and opined that only if the attorney and his client are able to predict with some degree of certainty whether certain communications are protected will the purpose of the attorney-client privilege be served. *Id.* at 684. In essence, the Supreme Court broadened the scope of the test to include communications between counsel and those corporate employees who are affected by or will affect any legal advice.

In *Upjohn,* information was needed to form a legal basis concerning compliance with securities and tax laws, foreign laws, currency regulations, and duties to shareholders. *Id.* at 685. General counsel prepared and distributed a questionnaire to Upjohn's employees. The questionnaires concerned matters within the scope of the employees' corporate duties. The responses to these questionnaires were used by counsel to formulate legal advice against potential litigation. The Supreme Court held that these communications were protected against

compelled disclosure as consistent with the underlying purposes of the attorney-client privilege. *Id.*

In the instant matter, the July 26, 1984 memorandum was prepared by Mr. Schmitt in his capacity as defendant's staff attorney. Mr. Schmitt wrote the memorandum after attending a meeting on July 24, 1984 with representatives of the ATV industry and the CPSC to discuss the CPSC inquiry into the increase of ATV-related accidents. This internal memorandum set forth Mr. Schmitt's general impressions of the meeting, evaluation of potential future governmental action, and legal advice regarding possible responses from defendant to the CPSC inquiry. The memorandum was directed to the president of defendant corporation, corporate counsel as well as several other engineering and technical personnel in defendant's employ. Mr. Schmitt specifically targeted these individuals since they possessed the information necessary to assist him in formulating or implementing legal strategies in response to the CPSC inquiry.

The underlying facts of this case are significantly similar to those in *Upjohn* in that counsel sought information from both upper and mid-level employees to prepare legal advice in response to a governmental investigation. Moreover, it is clear that the memorandum was intended to be confidential as it was not generally disseminated throughout the corporation. Therefore, the July 26, 1984 in-house memorandum is a protected communication within the ambit of the attorney-client privilege and is not discoverable.

## ORDER

And now, August 25, 1989, upon consideration of plaintiffs' motion to compel the production of the

July 26, 1984 in-house memorandum, defendant's response thereto, and argument thereon, it is hereby ordered that plaintiffs' motion is denied and the July 26, 1984 in-house memorandum is protected from disclosure under the attorney-client privilege.